IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 8:04CR384 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| JEROME BASS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for a new trial. Filing No. 103. The court has already ruled from the bench on December 28, 2005, granting the motion. Filing No. 106. Count I of the Indictment, Filing No. 1, charged the defendant with conspiring to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 846. The court conducted trial beginning on September 19, 2005, and ending on September 23, 2005. The jury returned a guilty verdict on Count I of the indictment. On October 1, 2005, defendant filed a motion for a new trial, which the court granted on December 28, 2005. In addition to the statements made by the court on the record at the December 28, 2005, hearing, the court files this memorandum and order setting forth its reasons for granting the motion for a new trial.

Upon defendant's motion, pursuant to Fed. R. Crim. P. 33, a court may grant a new trial if justice so requires. In reviewing a motion for new trial, the district court is to weigh the evidence and evaluate the credibility of witnesses. *United States v. Hilliard*, 392 F.3d 981, 987 (8th Cir. 2004). The court need not view the evidence in the light most favorable to the government when considering a motion for a new trial. *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). A district court may not grant a new trial unless the

evidence "weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *United States v. Crenshaw*, 359 F.3d 977, 996 (8th Cir. 2004) (citation omitted).

Karlos Harper testified as one of the primary witnesses in the case against the defendant. Harper has substantially changed his testimony concerning crucial issues in this case on several occasions. He testified falsely in this case. Trial Tr. at 321-23. Harper testified under oath at an April 6 hearing that Officer Jeffrey Gassaway phonied up Harper's proffer with respect to Jerome Bass. Trial Tr. at 352-53. He testified before Judge F. A. Gossett that it would be wrong to say that he [Harper] overheard Lamar and Jerome Bass talk about a charge for half an ounce of crack. Harper then leaves Judge Gossett's courtroom, returns, and changes his story. Trial Tr. at 353. He calls his mom once from jail and states that Jerome Bass did nothing. He writes to his Aunt Mary in July 2005 from prison and says he was pressured to say that Jerome Bass was involved, but he tells his Aunt Mary that there was no dope in the clothes and that Lamar Bass did not leave anything with Jerome Bass. Trial Tr. at 362-63. On May 10, 2005, Harper signed an affidavit verified by a notary public that says Officer Jeffrey Gassaway threatened him about his downward departure if he did not tell on Jerome Bass, admitting that he [Harper] lied to Gassaway about Jerome Bass. Trial Tr. at 357-58. Additionally, Mr. Harper also lied to police about his name in 1997.

The statements made by Karlos Harper in this case are material. The court believes the government should have known of such perjury and the likelihood that it could have affected the judgment of the jury. *United States v. Harris*, 310 F.3d 1105, 1110 (8th Cir. 2002). When this court sentenced Mr. Harper on May 11, 2005, the government advised this court that Mr. Harper provided substantial assistance and filed a motion for downward

departure. *See United States v. Harper,* 8:45CR268. Mr. Harper received a sentence less than the statutory minimum of 120 months. On the day of sentencing the court was advised in camera that Mr. Harper had changed his testimony the day before during a hearing in front of the magistrate judge. The court was further advised that Mr. Harper would not likely be called as a witness in any future case, since this conduct substantially undermined his credibility. The court does not believe the government was aware of Mr. Harper's subsequent affidavit or his letter to "Aunt Mary" but was certainly aware that Mr. Harper was conflicted about giving truthful testimony and should not have called him as a witness without further investigation concerning his consistent "truthfulness," whatever that might be.

During the defendant's trial, Mr. Harper's testimony so polluted the trial environment that this court believes the defendant could not have received a fair trial. Mr. Harper's testimony was a central part of the government's case. The government vouched for his veracity simply by presenting this testimony. The court can only assume that the jury relied on at least some of Mr. Harper's testimony.

Additionally, there was no objective evidence to corroborate Mr. Harper's testimony. Several other conspirators, all who were trying to obtain reduced sentences pursuant to Fed. R. Crim. P. 35, testified. However, none of them corroborated any specific instance of drug dealing described by Mr. Harper (nor between one another for that matter). The court notes that the fact that a witness stands to gain by lying does not in and of itself make the testimony unsubstantial. *Crenshaw*, 359 F.3d at 988. However, these witnesses in large measure lacked credibility. A number of these witnesses rode together from the jail to the trial and discussed their trial testimony. The government produced no drugs, no

wiretaps, no pictures, no attempted buys, and no testimony of confidential informants. The closest the government came to corroborating any testimony was evidence of an admission to Officer Gassaway. Officer Gassaway testified that the defendant admitted that he carried his brother's clothes to individuals who may have been drug dealers and that the clothes may have contained hidden drugs. There was no testimony that corroborated such a method of delivery to any of the cooperating witnesses. In and of itself, such lack of corroborating evidence is not sufficient to grant a mistrial. But in a case such as this with perjured testimony and a lack of credible witnesses where the quality of the evidence is so lacking with regard to guilt and amount of drugs, corroborating evidence would prevent such a miscarriage of justice.

Accordingly, the court finds the motion for new trial, Filing No. 103, is granted in this case.

DATED this 30th day of December, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge