IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 8:04CR384 |
| Plaintiff, | ) | |
| | ) | SENTENCING |
| v. | ) | MEMORANDUM |
| JEROME BASS, | ) | |
| Defendant. | ) | |

The court writes this memorandum in conjunction with its sentence ordered on June 8, 2007.  Filing Nos. 145 and 150.  The court does not believe the sentence meted out in this case is reasonable.  For this reason, the court issues this opinion.

Defendant Jerome Bass is a victim of a harsh federal sentencing structure which often hinders a judge's ability to assess appropriate sentences.  The culprit: mandatory minimum sentences.[1]  Congress enacted federal statutes and appointed a sentencing commission designed to take discretion away from judges to ensure fair and consistent sentences throughout the United States.[2]  These mandatory minimums often tie the hands of judges in cases where the mandatory minimum should not apply.[3]  Although the court could give numerous examples of the unfairness and unjustness of these mandatory minimums over the course of their existence, in this opinion it will only address the mandatory minimum sentence as it relates to this defendant, Jerome Bass (hereinafter Mr. Bass).

---

[1] Anti-Drug Abuse Act of 1986, Publ L. 99-570, 100 Stat. 3207.

[2] 28 U.S.C. § 991(b)(1)(A)-(B).

[3] *See* Yellen, David.  "Saving Federal Sentencing Reform After *Apprendi, Blakely* and *Booker,*" 50 Vill. L. Rev. 163, 174 and 180 (2005) (discussing harshness of mandatory minimum sentences).

The government issued an indictment charging Mr. Bass with conspiracy to distribute over 50 grams of cocaine base in violation of 21 U.S.C. § 846. Filing No. 1. Prior to trial in this case, Mr. Bass filed a motion to enforce cooperation agreements dealing with other defendants. Mr. Bass argued that certain defendants agreed to plead guilty, with the understanding that in turn Jerome Bass would not be indicted or charged. Officer Jeffrey Gassaway allegedly promised deals to defendants that would have allowed Mr. Bass to be free from all charges. The magistrate determined that Mr. Bass could not enforce these agreements, if they in fact existed. This court agreed from a legal perspective, but it was the first of many times the system would fail Mr. Bass.

It appears that the government did attempt to negotiate a plea agreement with Mr. Bass. Although Mr. Bass has argued his innocence throughout this investigation, he was asked by the government to give evidence against his brother and Karlos Harper. The court assumes that Mr. Bass had information to share with the government about his brother and possibly his cousin. Oddly enough, both his brother and cousin were cooperating with the government. For whatever reason, he did not provide sufficient evidence about his brother or cousin to the government. Mr. Bass, professing his innocence, chose to go to trial. This court then set a date for trial of the case. The court was appalled at the paucity of evidence against Mr. Bass. This is a so-called "dry" conspiracy case. In these cases often the evidence is circumstantial. "Dry" conspiracy cases rise or fall on the jury's ability to judge the credibility of the government's cooperating witnesses. Most jurors have little experience understanding the real motivation of cooperating witnesses and great faith in the government only presenting credible witnesses for their consideration. In this case, there was no direct evidence of drug dealing by Mr.

Bass.  The government offered no evidence of drugs, no evidence of drug money, no wiretaps, no pictures, and no confidential informant testimony.  The only evidence was the testimony of those who received Rule 35 reductions, including the testimony of Karlos Harper, and the testimony of Officer Jeffrey Gassaway.  The evidence against Mr. Bass was very vague in most instances.  For example, Karlos Harper testified that in 2002 Lamar Bass left crack with Jerome Bass at his house and Jerome Bass sold it, probably four different times.  The trial testimony regarding times of drug transactions was vague; the amount of each transaction vague; and information about the sales vague.  The same kind of testimony occurred with regard to the other government witnesses who testified and received Rule 35 reductions.  There was no testimony in this case where one witness corroborated the testimony of another witness as to Jerome Bass' involvement in drugs.

The government offered the testimony of members of the drug conspiracy and the testimony of Officer Gassaway.  First, the court will briefly address the testimony of the co-conspirators.  There were a number of members of this conspiracy.  There is ample evidence of their guilt and involvement in the drug trafficking business, although not in a conspiracy with Mr. Bass.  Most of them previously received significant sentences.  The government offered them a deal.  If they would testify against Jerome Bass, they would be eligible for a Rule 35 reduction pursuant to Fed. R. Crim. P. 35.

Certain of these witnesses had great incentive to lie.  First, most were offered significant deals. For example, Terrell Jackson received a 210-month sentence which was reduced to 60 months; Jacara Baker received a 168-month sentence that was reduced to 42 months; Deandre Baker received a 121-month sentence that was reduced to 40 months; Karlos Harper received a 96-month sentence; Damian Jackson received a 135-

3

month sentence; Royce Brown received a 135-month sentence that was reduced to 60 months; Antone Green received a 151-month sentence that was reduced to 63 months; and Jerry Coleman received a 210-month sentence that was reduced to 48 months. Second, there were multiple rival gangs generally involved in the drug business. It was clear that testifying against Jerome Bass facilitated a gang purpose of revenge against a competing gang. Third, it was also clear that Jerome Bass' brother, Lamar Bass, proffered information about other gang members and those gang members are now doing jail time. There is no doubt that testifying against Lamar's little brother was motivated in part by revenge. The court found the testimony of these alleged co-conspirators to lack credibility in large measure, particularly with regard to quantity of drugs.

And then there was the testimony of Karlos Harper. Harper had changed his story a number of times before he ever testified at trial. He testified during trial that Mr. Bass participated in this conspiracy; however, he previously signed an affidavit stating that Mr. Bass was not involved. See Tr. Pretrial Hearing, 63:25, 64:1-2, 78:18-25; 79:1-11; 124:1-10; Trial Tr. 354:6-25; 355:1-10; 350:2-9. He testified in a proceeding before the magistrate judge and changed his story regarding Mr. Bass' involvement. He sent a letter to Jerome Bass' mother stating that Mr. Bass was not involved. Tr. Tr. 362:16-25; 363:1-17. Harper also signed a notarized statement, saying his statement about Jerome Bass was coerced by Officer Gassaway and was untruthful. Trial Tr. 357:1-22. Harper had a difficult time with his stories. He had been taken in and raised by Jerome Bass' mother. The court believed that Harper changed his story so many times that his testimony could not be believed. The court found his perjured testimony so permeated the trial that Mr. Bass should receive a new trial.

Next, the court wishes to touch on the other primary witness in this case, Officer Gassaway. Officer Gassaway testified that Mr. Bass was asked if possibly he carried clothes that might have had drugs in them. Mr. Bass allegedly stated that he might have carried clothes and maybe they had drugs wrapped up in them. The question and answer were contrived at best. The court's experience in previous Omaha Police Department cases is that they do not record interviews with suspects, except in some homicide investigations. The jury is required to rely on the veracity of the reporting officer in recounting conversations with a suspect. There was no other witness to this alleged admission. There is no evidence in this record that Mr. Bass or anyone else carried clothes with drugs in them to buyers or suppliers. There is no evidence to substantiate this alleged statement or admission that Officer Gassaway says Mr. Bass made. The court did not find this statement to be credible, and the statement was definitely not supported by any other evidence during trial. The court has had previous cases with Officer Gassaway, and while the court is aware that he is an effective gang enforcement officer, the court has been less than pleased with some of the aggressive tactics used by Officer Gassaway to accomplish his arrests and convictions.

The court issued a memorandum and order granting a motion for a new trial. First, the court believed the testimony of Karlos Harper was such that Mr. Bass did not receive a fair trial. Second, the court did not find the testimony of Officer Gassaway credible, particularly with the alleged statement made by Mr. Bass to Officer Gassaway, its characterization by the government as a confession, and the total lack of evidence in the record to support such a statement. Third, the remaining testimony by the other conspirators was not credible. They had irresistible incentives to lie, and their testimony

5

was not specific as to time and place and quantity as it related to Mr. Bass. Fourth, in the court's opinion the jury had to speculate to make a determination regarding quantity of drugs attributable to Mr. Bass in this case. In fact, during deliberations the court received the following question from the jurors: "Does the amount attributable to the defendant have to be unanimous?" Filing No. 94.

The government appealed. The Eighth Circuit saw fit to reverse this court's grant of a new trial for Mr. Bass. Filing No. 137. The Eighth Circuit remanded the case for sentencing.

The court ordered a presentence report. The presentence report showed the following. Mr. Bass had a fairly clean record from a criminal history perspective. He had a possession-of-marijuana charge at the age of 19 and a driving-with-suspended-license charge at the age of 21. He had been attending a local community college. He indicated that he used marijuana three times in his life and alcohol four times in his life. He is married with a baby.

The government chose to file this case in federal court, rather than state court. It is entitled to do so. However, best case scenario for the government, Mr. Bass is a small player in this conspiracy to distribute cocaine. He is guilty of associating with his brother and cousin who clearly deal drugs. He has a minimal criminal history and is attempting to remove himself from the criminal environs of his relatives by attending college. Had he been charged in Nebraska state court, he would have received, at most, a conviction for a Class IC felony, which has a mandatory minimum of five years, and with good time would be released in two and one-half years. *See* Neb. Rev. Stat. § 28-416; 28-105. The state minimum sentence would be less than that if the amount charged was less than the

verdict in this case.[4]  Further, he quite probably would have received probation or possibly diversion to drug court.  Instead, we have a minor player, who because he would not provide sufficient information against his brother, and who because he believed he was innocent and chose to go to trial, is in federal court facing a federal mandatory minimum sentence of ten years.

The disparity is significant.[5]  Because Mr. Bass exercised his constitutional right to trial, he is not entitled to acceptance of responsibility.  Because the jury found Mr. Bass guilty of a quantity between 50 and 150 grams, the court is required by law to invoke the mandatory minimum sentence.  That sentence is ten years. 21 U.S.C. § 841(b)(1)(A).  His guideline range is 97 to 121 months.  But for the space of two blocks—the distance one must walk from federal court to state court in Nebraska—Mr. Bass is in federal prison for ten years rather than two and a half years or less in state prison.

There is nothing this court can do to rectify what it feels is an injustice.  The mandatory minimum sentences are brutal, unduly harsh and unjust in many cases.[6]  This is such a case.  In the court's opinion, the jury was confused.  The testimony was perjured

---

[4]Given the lack of evidence with regard to quantity in this case, Mr. Bass most assuredly would have been charged with a substantially smaller amount of drugs in state court.

[5]The court notes also that Mr. Bass is further subjected to the issue of sentencing disparity between crack cocaine and powder cocaine.  The Sentencing Commission is trying to facilitate change in Congress so that the disparity is substantially less, so that the courts do not continue to sentence the minor players at levels higher than those who are really the major traffickers.  Such change, however, will not assist Mr. Bass. See Report to the Congress: Cocaine and Federal Sentencing Policy, pp. 2-9, United States Sentencing Commission (May 2007).

[6]*See United States v. Hungerford*, 465 F.3d 1113, 118 (9th Cir. 2006) (where Justice Reinhardt, in his concurring opinion, states "it cannot be left unsaid how irrational, inhumane and absurd the sentence in this case is . . . a predictable by-product of the cruel and unjust mandatory minimum sentencing scheme adopted by Congress."), *United States v. Jones*, 145 F.3d 959, 966-71 (8th Cir. 1998) (where Judge Myron Bright, in his concurring and dissenting opinion, discusses the unfairness imposed by the mandatory minimums when the lowest drug dealer on the totem pole receives a heavier sentence than the master mind of the conspiracy, and criticizes a system that rewards a snitch under the guise of "acceptance of responsibility" while the underlings have very little to sell a prosecutor).

7

and lacked credibility on many levels.  For those reasons the court does not believe the government proved quantity in this case, nor guilt beyond a reasonable doubt.  The sentence imposed by the court in this case is not just, but it is better than the one outlined in the initial presentence investigation report which further exacerbates the incredible testimony perpetrated by cooperating witnesses.  The court is of the opinion that Mr. Bass was an excellent candidate for rehabilitation.  Instead, the citizens of this country will pay in excess of a quarter of a million dollars to ensure that Mr. Bass is penalized for his behaviors and also ensure he has very little chance of success upon his release.

DATED this 1st day of August, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge