IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 8:04CR384 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| JEROME BASS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the Jerome Bass' amended motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, Filing No. 190. A jury found Jerome Bass guilty of Count I of the indictment for conspiracy to distribute and possess cocaine base, in violation of Title 21, U.S.C. §§ 41(a)(1) and 841(b)(1)(B). *See* Filing No. 96. The court sentenced Jerome Bass to the custody of the Bureau of Prisons for 120 months followed by 5 years supervised release with special conditions. *See* Filing No. 150, Judgment in Criminal Case.

After trial, Jerome Bass filed a motion for a new trial which was granted by the district court. The United States Attorney's office, on behalf of the government, appealed the district court's order for a new trial. The Eighth Circuit Court of Appeals reversed the District Court and remanded the case for sentencing. *United States v. Bass*, 478 F. 3d 948 (8th Cir. 2007). Jerome Bass was sentenced by the district court to a term of 120 months on June 8, 2007. Jerome Bass filed an appeal challenging his conviction and sentence with the Eighth Circuit Court of Appeals, and the Eighth Circuit Court affirmed the finding of guilt and the sentence imposed by the court. Filing No. 165.

***Standard of Review***

In his § 2255 motion, Jerome Bass alleges a claim of ineffective assistance of counsel. Jerome Bass argues that he received ineffective assistance of counsel because his attorney's performance fell below the objective standard of reasonableness the Supreme Court defined in *Strickland. See Strickland v. Washington*, 466 U.S. 668, 690-691 (1984). Jerome Bass bases this argument on four separate counts of his attorney's conduct that he contends fall below *Stickland*'s objective standard of reasonableness. *See* Filing No. 190, Amended Motion to Vacate.

To prevail on an ineffective assistance claim, Supreme Court precedent requires a petitioner to demonstrate that counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance to such an extent that there is a reasonable probability that the outcome of the trial would have been different, absent counsel's error. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment. *Id*. at 689. Prejudice is shown by demonstrating that counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Under *Strickland*, counsel's performance is "measured against an objective standard of reasonableness," and "hindsight is discounted by pegging adequacy to counsel's perspective at the time investigative decisions are made, and by giving a heavy measure of deference to counsel's judgments." *Rompilla v. Beard*, 545 U.S. 374, 380-81 (2005) (internal quotations and citations omitted).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). "If the defendant cannot prove prejudice, we need not address whether counsel's performance was deficient." *Williams v. United States*, 452 F.3d 1009, 1013 (8th Cir. 2006) (quoting *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000)).

In order "to establish prejudice from counsel's failure to investigate a potential witness, a petition must show that the witness would have testified and that their testimony would have probably changed the outcome of the trial." *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996).

Mr. Bass has multiple claims that fall under the umbrella of ineffective assistance of counsel, including: (1) counsel's erroneous information to Jerome Bass that Bass could not have a bench trial; (2) counsel's failure to impeach Karlos Harper or to file an objection or a motion in limine to preclude the testimony of Karlos Harper; (3) counsel's failure to object to the improper vouching by the government during closing arguments; and (4) counsel's failure to object to the testimony of Terrell Jackson about Jimmy Swain, which Jerome Bass argues is irrelevant and highly prejudicial. Filing No. 190, Amended Motion to Vacate pursuant to § 2255.

***Discussion***

This was a dry conspiracy case, a type of case the court has reason to believe is seldom if ever prosecuted in this district anymore. All the government witnesses received significant Rule 35 reductions.[1] Karlos Harper, Jerome Bass' cousin, gave the most

[1] This court previously set forth the significant sentence reductions received by these witnesses. *See* Filing No. 152, Sentencing Memorandum at 3-4.

damaging testimony. There was no direct physical evidence of drug dealing, no drugs, no money, no wiretaps, no pictures and no confidential informant testimony.[2] Most of the testimony of the witnesses was not corroborated by any objective evidence or substantiating testimony. This court previously stated:

> This is a so-called "dry" conspiracy case. In these cases often the evidence is circumstantial. "Dry" conspiracy cases rise or fall on the jury's ability to judge the credibility of the government's cooperating witnesses. Most jurors have little experience understanding the real motivation of cooperating witnesses and great faith in the government only presenting credible witnesses for their consideration. In this case, there was no direct evidence of drug dealing by Mr. Bass. The government offered no evidence of drugs, no evidence of drug money, no wiretaps, no pictures, and no confidential informant testimony. The only evidence was the testimony of those who received Rule 35 reductions, including the testimony of Karlos Harper, and the testimony of Officer Jeffrey Gassaway. The evidence against Mr. Bass was very vague in most instances. For example, Karlos Harper testified that in 2002 Lamar Bass left crack with Jerome Bass at his house and Jerome Bass sold it, probably four different times. The trial testimony regarding times of drug transactions was vague; the amount of each transaction vague; and information about the sales vague. The same kind of testimony occurred with regard to the other government witnesses who testified and received Rule 35 reductions. There was no testimony in this case where one witness corroborated the testimony of another witness as to Jerome Bass' involvement in drugs.

Filing No. 152, Sentencing Memorandum at 2-3.

This court also stated:

> The court ordered a presentence report. The presentence report showed the following. Mr. Bass had a fairly clean record from a criminal history perspective. He had a possession-of-marijuana charge at the age of 19 and a driving-with-suspended-license charge at the age of 21. He had been attending a local community college. He indicated that he used marijuana three times in his life and alcohol four times in his life. He is married with baby.

[2] For further review of the facts and determinations of this court regarding the numerous instances of weak evidence, see this court's Memoranda and Orders, Filing No. 110, Motion for a New Trial, and Filing No. 152.

> The government chose to file this case in federal court, rather than state court. It is entitled to do so. However, best case scenario for the government, Mr. Bass is a small player in this conspiracy to distribute cocaine. He is guilty of associating with his brother and cousin who clearly deal drugs. He has a minimal criminal history and is attempting to remove himself from the criminal environs of his relatives by attending college. Had he been charged in Nebraska state court, he would have received, at most, a conviction for a Class IC felony, which has a mandatory minimum of five years, and with good time would be released in two and one-half years. See Neb. Rev. Stat. § 28-416; 28-105. The state minimum sentence would be less than that if the amount charged was less than the verdict in this case. Further, he quite probably would have received probation or possibly diversion to drug court. Instead, we have a minor player, who because he would not provide sufficient information against his brother, and who because he believed he was innocent and chose to go to trial, is in federal court facing a federal mandatory minimum sentence of ten years.

Filing No. 152, Sentencing Memorandum at 6-7.

A. Karlos Harper.

Mr. Harper first testified at his pretrial hearing before Magistrate Judge F. A. Gossett that Jerome Bass was not involved in dealing crack cocaine. Filing No. 39, Tr. at 78-79. Harper recanted and implicated Jerome Bass, because Harper wanted to receive a downward departure. Pretrial hearing, Filing No. 39, Tr. at 124; Trial Transcript, Filing No. 113, at 321-23; 353. Harper later admitted that he recanted his pretrial hearing testimony and at trial because the "prospects of not getting a downward departure scared him to death." Filing No. 113, at 355:4-6. He recanted this testimony the day before he was supposed to get sentenced to 210 months in prison. He testified that he lied and in fact Jerome Bass was not involved in dealing crack. Filing No. 113 at 354-55. On May 10, 2005, Harper signed an affidavit saying any statements he made about Jerome Bass were false and that Officer Jeffrey Gassaway had threatened him with loss of the downward departure absent incriminating statements against Jerome Bass. Filing No. 39, at 63:25; 64:1-2; 78:18-25; 79:1-11; 124:1-10; Filing No. 113, Trial Tr. 350; 352-53; 354:6-25; 355:1-

10; and 357-58. Harper admitted that he committed perjury at his pretrial hearing. Filing No. 113, at 352:9-353:20. Then, in July 2005, Harper wrote a letter to his Aunt Mary that said there was no dope in the clothes carried by Jerome Bass. Filing No. 113, at 362:16-25; 363:1-17. Harper indicated in this letter that he said nothing about Jerome Bass being involved in drugs. Filing No. 113 at 363. Also, Harper admitted he twice told counsel, Michael Levy, that Jerome Bass had no involvement in the drugs. Filing No. 113 at 349:1-17. Harper was Jerome Bass' cousin and lived with Bass' brother, Lamar. Harper was the primary defense witness at the pretrial hearing who was to have testified that Jerome Bass had no involvement with drugs. At trial, however, Harper testified that Jerome Bass delivered crack cocaine on a few occasions.[3] Harper also testified that he had previously lied to law enforcement about his name. Filing No. 113 at 350:10-12; 23-25. Harper admitted he lied twice to Jerome Bass' legal counsel, Michael Levy, lied once about his name, and lied once to Judge Gossett under oath. Filing No. 113 at 355:7-15.

Jerome Bass argues that counsel was ineffective as counsel failed to file a motion in limine to exclude the testimony of Harper. Jerome Bass argues that this court would have excluded Harper's testimony given the history of untruthfulness. Counsel for Jerome Bass did not file a motion in limine to exclude the testimony. Given the numerous untruths told by Harper, it is likely that this court would have excluded the testimony of Harper. This is also supported by the fact that this court clearly found the testimony so unreliable that

[3]The court notes for the record that similar discrepancies occurred in a related case, *United States v. Jevaugh Erwin*, 8:02CR419. During trial, Karlos Harper testified that he was a cocaine dealer and after he was caught he made a deal with the police to help reduce his sentence. At trial Harper admitted he gave a proffer three months before the trial of Erwin. He testified he mentioned Erwin's name but it was not part of the proffer. However, he gave an amended proffer regarding Erwin right before trial, at the request of Officer Gassaway, which stated Erwin distributed crack cocaine to Harper on five or six occasions, and that he would do whatever Harper could to get a sentence reduction. See Filing No. 79 at 83:1-84:5.

.

it ordered a new trial. The court finds there is reasonable probability that prejudice existed which was "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The court agrees that the verdict was undermined by this testimony. Counsel's behavior in this regard was deficient. He should have filed a motion to exclude the testimony of Karlos Harper and to further object to Harper's testimony at trial.

B. Vouching

During closing arguments, counsel for the government stated, with regard to her witnesses:

> Most of them have testified before this trial, but not all. And they know what the truth is, and they understand it's important, and they came before you and told you the truth about Jerome Bass. Sergeant Langam explained it best when he testified about his personal barometer, how he gauges the truthfulness in proffer interviews. He corroborates the interviews against each other. . . .

Filing No. 115, at 752:1-25. During closing arguments the government made the above statements with regard to the credibility of the various witnesses and with regard to Jimmy Swain.[4] Counsel for Jerome Bass did not object to these statements in spite of the fact that it allowed the prosecutor to vouch for the witnesses. A "prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18-19 (1985) (summarizing *Berger v. United States*, 295 U.S. 78, 88-89 (1935)). "Attempts to bolster a witness by vouching for his credibility are normally improper." *United States v. Littrell*, 439 F.3d 875, 882 (8th Cir. 2006) (citation omitted). In this case counsel for the government put her credibility at issue by vouching for the witnesses. She first stated that

[4]The court will discuss the issue with regard to Jimmy Swain's testimony later in this Memorandum and Order.

the witnesses "testified before this trial . . . [a]nd they know what the truth is, and they understand it's important, and they came before you and told you the truth about Jerome Bass." Filing No. 115, at 752:15-19. Each of the witnesses in this trial had something substantial to gain—downward departures. Each of them, except for Lamar Bass, Jerome Bass' brother, testified against Jerome Bass, and each received substantial departures. Further, Lamar Bass proffered against most of these witnesses. There were incentives for these witnesses to lie: (1) they received substantial reductions in their sentences; and (2) Lamar Bass and proffered on most of them, and this was a way to obtain revenge against him, by testifying against his brother. Lamar Bass testified that Jerome Bass did not distribute cocaine. Lamar Bass did not receive a downward departure. Counsel further vouched for her witnesses during closing when she stated: "Sergeant Langan explained it best when he testified about his personal barometer, how he gauges the truthfulness in proffer interviews. He corroborates the interviews against each other." Filing No. 115 at 752:20-23.

This behavior on the part of the prosecutor, particularly in the context of such weak witnesses, is improper vouching, and there is no reason counsel should have failed to object to such tactics. There was no evidence during trial that the proffers were truthful or corroborated. The testimony showed that most of the witnesses had in fact been untruthful with law enforcement and received in some instances more than 50% reductions. The prosecutor wrongfully put her "personal reputation behind the testimony of its witnesses." *Littrell*, 439 F.3d at 882. Therefore, the court finds counsel deficient in his representation on this issue, and such deficiency was prejudicial to Jerome Bass and the outcome of his case. Accordingly, the court finds such improper vouching prejudiced the jury.

C. Jimmy Swain Testimony

With regard to Jimmy Swain, Terrell Jackson testified that he had a friend (Jimmy Swain) who played basketball in college. Swain was expelled for selling marijuana. He apparently returned to Omaha and sold drugs. There was no showing that Jimmy Swain was related to the conspiracy in this case. Yet, counsel for Jerome Bass did not object to the testimony about Mr. Swain. The prosecutor also highlighted the testimony about Jimmy Swain during her closing remarks, again without Mr. Levy objecting, by stating:

> Rommie [Bass] may have even gone to college, but, so did Jimmy Swain . . . [h]e [w]as a college basketball star, but he couldn't make any money, couldn't make the kind of money he could make from dealing crack cocaine. So he returned to the neighborhood to sell that crack cocaine. Jimmy Swain was among the first people indicted [in this conspiracy] and proffered on Lamar Bass. Rommie Bass, like the others before him, was drawn to this money, like a moth to the flame.

Filing No. 115, 744:9-21. The court agrees that counsel for Jerome Bass should have objected to this testimony. Such testimony was not relevant to this alleged conspiracy. Jimmy Swain's actions were in no way related to the actions of Jerome Bass. The statements were totally irrelevant and prejudicial. The jury could easily have drawn an inference that Jimmy Swain was somehow connected to Jerome Bass. The correlation that counsel for the government tried to make between Jimmy Swain, a college student and drug dealer, and Jerome Bass, a college student and alleged drug dealer, was irrelevant. Counsel for Jerome Bass did not try to impeach or rebut this part of Mr. Jackson's testimony. The court finds there was no trial strategy behind this decision. In closing, counsel for the government referred to Jimmy Swain as the first person indicted in this conspiracy. The court received no evidence that Jimmy Swain sold crack cocaine; there was no evidence that he was among the first people indicted in this conspiracy; and

the "moth to the flame" comment made by the prosecutor was highly inflammatory. The court finds counsel for Jerome Bass was ineffective under *Strickland* for failing to object to testimony and to closing arguments as to Jimmy Swain. Counsel's performance was deficient and prejudicial to the outcome of the case.

D. Waiver of Jury Trial

With regard to the waiver of jury trial issue, Jerome Bass argues he wanted a nonjury trial in this case. Bass argues his counsel did not fully or accurately advise him of his rights. He further argues that there are less findings of guilty when a defendant chooses a bench trial. Thus, argues Bass, he was clearly prejudiced by his counsel's failure to adequately inform him of his choice to choose a nonjury trial. The court disagrees with this argument. The government must agree to a waiver of the jury trial. Counsel for the government has filed an affidavit indicating the government would not have agreed to waive its jury trial in this case. Ex. 1, Filing No. 196. Thus, the court finds this issue is without merit.

THEREFORE, IT IS ORDERED:

1. Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody, Filing No. 190, is granted.

2. A separate Judgment will be issued.

3. The Bureau of Prisons is ordered to release Jerome Bass from jail within seventy days of the date of this Memorandum and Order, unless the government files for a motion for new trial within that time period in accordance with 18 U.S.C. § 3161, or unless the court further orders otherwise.

4. The Clerk of Court is directed to prepare a certified copy of this Memorandum and Order and corresponding Judgment and submit same to the U.S. Marshal's Office for forwarding to the appropriate division of the Bureau of Prisons.

DATED this 24th day of March, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.